SALUDA, The (The WASHINGTON v.). See Case No. 17,232.

## Case No. 12,272.

### The SALVOR.

[18 Leg. Int. 357;[1] 4 Phila. 409.]

District Court, E. D. Pennsylvania. Nov. 1, 1861.

PRIZE — CUSTODY OF PRISONER AND WITNESSES.

[1. Prisoners and persons brought in with the prize for examination in the prize court do not pass into the care and custody of the court along with the prize. Their custody, unless they are surrendered under some criminal charge cognizable by the judicial authority, continues to be military in its character, and cannot be interfered with by the prize court, either before or after their examination, except for the purpose of securing such examination. Whether they should be discharged after examination or continued in custody is a question for the prize master or the superior naval officer of the station to determine.]

[2. The duty of providing for the support of such persons while in custody devolves upon the government, but not upon the judicial department; and the court can make no allowance for them, except, perhaps, in case they were discharged before completing their examination, an allowance of witnesses' fees might be made for the time of their actual detention for the completion of their examination.]

[3. Quære: As to how far the military duty of protecting a prize in the port of adjudication continues to rest upon the prize master and crew, after she is in the marshal's official custody for civil purposes.]

In admiralty.

CADWALADER, District Judge. In this case I have received a letter from the commandant of the navy yard at this station, on the subject of the persons on board of this vessel, whom he designates as prisoners and passengers. Though epistolary communications to courts of justice are always inconvenient, and in most cases, irregular,[2] an occasional exception must be allowed in transacting the peculiar business of prize courts. I have therefore directed that this letter be filed. The commandant asks me for some directions as to his disposal of these persons. I can, of course, give no direction as to the mode in which officers of the naval service are to follow its rules concerning the custody and treatment of their prisoners, though, in the case of a prize, I might entertain a complaint of irregularities of certain kinds in these respects.

In prize cases, the duty of the naval captors who send a vessel into port for adjudication, requires them to send in a sufficient number of the persons taken in her, including, in ordinary cases, the master and mate, as witnesses for examination. In some cases, actual or nominal passengers are the most important examinants. Few really contestable cases occur in which the examinants are too numerous. They are not unfrequently too few; and they have, in some cases, been persons of too inferior grade to satisfy the requirements of the judicial investigation. A neglect of the fulfillment of this duty, not less than improper treatment of captured persons, may be the subject of judicial consideration, affecting questions of prize money, and of costs, and sometimes involving questions more serious. Officers of the naval service have occasionally fallen into the mistake of supposing that when captured vessels are brought into port and pass into judicial custody, the care and custody of the prisoners or persons brought in for examination becomes judicial. This impression is, in a general sense, erroneous. The custody, unless they are surrendered under some criminal charge cognizable by the judicial authority of the district, continues to be military, and cannot be interfered with by the prize court except for the purpose of securing the examination of the witnesses. So, after their examination has been completed, their custody, if it continues, is still military, and not civil, unless they are charged with a criminal offence, and surrendered under it. Whether persons not thus charged should be detained in military custody after they have been examined, is often a question of great public interest, and may be attended with serious difficulty. But this question does not concern the prize courts. It is for the consideration of the prize master, or of the superior naval officer of the station.

On a former occasion I made some remarks, of which the substance was written out, and formed the basis of a subsequent communication from the assistant attorney of the United States for this district to the attorney general. What I then said I now repeat, as fol-

---

[1] [Reprinted from 18 Leg. Int. 357, by permission.]

[2] See 1 Addams, Ecc. 305–307; 1 Macn. & G. 121, 122, 125–128; 1 Hall & T. 290, 291, 294, 295, 298, 299; 13 Jur. 860.

lows: "When a captured vessel is brought into port for adjudication, and passes into judicial custody, the prize master or other naval commander retains the custody of the prisoners until, according to the rules of the naval service, they are discharged, or transferred into close custody, as the public interest may require. Sometimes the prisoners are merely persons detained for examination as witnesses. That they are brought in and are detained for this purpose alone, does not prevent them from continuing in naval custody. Sometimes these persons cannot be discharged with humanity, because they might starve for want of means of present support in a strange place. In other cases, they are so far dangerous from possible hostile relations, that, though perhaps not liable to detention as close prisoners, their premature liberation would be imprudent. The duty devolves upon the government, but not upon its judicial department, to provide for their support while in port. If the expenses of their comfortable subsistence are not defrayed by the local disbursing agent of the naval department of the government, and they are consequently discharged, their discharge cannot be prevented by the prize court. This court might, if they were thus discharged before the completion of their examinations, direct an allowance to them of one dollar and a-half per day each, as witness money. But this allowance would only be made for the time, seldom exceeding a single day, of their actual detention for examination after their discharge from naval custody, and would not absolve the naval custodian from responsibility for their premature or improper discharge, or for want of proper care of them before and afterwards. An incidental subject of less importance, though not unimportant, is that the prize master and his crew usually incur incidental charges which cannot be repaid by the marshal or other officer of the judicial department until after the condemnation and sale of the captured property. Such expenses ought to be promptly reimbursed as other current local expenses of the naval station to which the prize may be brought. The officer defraying them can, in proper cases for a reimbursement, obtain it after condemnation out of the proceeds. This, if a condemnation ensues, can, on behalf of this officer, be attended to by the attorney of the United States, who, in proper cases, is always ready to render such incidental services on request. Pilotage, towage and canal charges, are examples of such expenditures as may be thus incurred by persons entrusted with the safe delivery of a prize vessel into the hands of the judicial officers of the government. Such charges are not, like the wharfage, &c., incurred after delivery into judicial custody, payable by the marshal. I have been told that in some judicial districts of the United States, the marshals are in the habit of paying such prior charges. This may be very proper where they may choose to act for the purpose as disbursing agents of the

proper executive department of the government, and are employed for the purpose. But it is not a part of their official duty as marshals, or a subject within any direct cognizance of the prize court before condemnation."

The question how far the military duty of protecting a prize in the port of adjudication, continues to rest upon the prize master and his crew, after she is in the marshal's official custody for civil purposes, arose in a case in which some of the prize crew had deserted in this port. The case was that of a recaptured vessel. The question was whether the deserters had forfeited their shares of salvage decreed. If no such duty of protection continued, their shares were not forfeited by such subsequent misconduct. The case was argued on the question whether the duty did not continue so long as they remained in the port of adjudication, and had been assigned to no other incompatible naval duty. The case remains under consideration. A similar question as to prize money might arise in the case of a captured vessel. The distinction between cases which thus concern the vessel, and the case of prisoners, is, that prisoners do not pass, as the vessel does, into the custody of the prize court. However therefore the case to which I have referred, of the deserters, may be decided, the case of prisoners is free from doubt. It would be easy to state cases in which their military custody might be required for the safety of the country. The rule must be uniform in all cases.

The clerk of the court will send a copy of this to the naval commandant. The district attorney informs me that he has no criminal charge to prefer against any of the prisoners. The prize commissioner has not, as yet, made his report. But he informs me that he has completed his examinations of the witnesses who were brought in the vessel. The libel was filed and allowed yesterday, when the vessel passed into the legal custody of the marshal. The business of the court, therefore, does not seem to require the longer detention of any of the persons in question. Their discharge or detention rests with the officers of the naval service, according to its rules.